IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DIMAGGIO MONTELL STARR,

                Plaintiff,

vs.                                                    Case No. 20-3302-SAC

SHERIFF CALVIN HAYDEN, DEPUTY
BREITENKAMP, DEPUTY BRYANT,
and JOHNSON COUNTY BOARD OF
COUNTY COMMISSIONERS,

                Defendants.

MEMORANDUM AND ORDER

The court entered a memorandum and order directing the plaintiff Dimaggio Montell Starr either to file an amended complaint that cured all noted pleading deficiencies or to file a memorandum showing good cause why this case should not be dismissed for these pleading deficiencies. ECF# 7. The plaintiff Starr has filed a nine-page amended complaint. ECF# 8. Starr followed up with a motion filed less than a week later. ECF# 9. He asks the court in its second order to address any pleading deficiencies and permit him a second opportunity to amend with more than three weeks in which to respond. It should be noted that the plaintiff never asked the court for an extension of time to file his amended complaint.

**Nature of Suit and the Plaintiff's Allegations**

Incarcerated at the Johnson County Detention Center in Olathe, Kansas ("JCDC"), Mr. Starr's amended complaint alleges a 42 U.S.C. § 1983 action for violations of his First Amendment right to religious freedom and practice, Fourteenth Amendment right to privileges and immunities, and Eighth Amendment right to

1

protection against cruel and unusual punishment. His amended complaint repeats the same four defendants: the two deputies, Brietenkamp and Bryant, for seizing and discarding his religious altar from his cell; the Johnson County Sheriff Calvin Hughes for supervisory liability in negligently training the deputies about these First Amendment matters; and Johnson County Board of Commissioners for supervisory liability in negligently training the deputies.

For the First Amendment claim, Starr now alleges that on September 24, 2020, he had on his cell wall a "Santa Muerte Santeria altar" consisting of a "picture and a few figurines." ECF# 8, p. 5. Deputy Breitenkamp came to his cell and instructed him to remove those things from the wall. Starr argued with Breitenkamp pointing out that those things were altar. He told Breitenkamp to check with the superiors and then warned Breitenkamp against violating his right to practice his religion. Starr alleges Deputy Breitenkamp ignored his points. Deputy Bryant then joined them in the cell and asked what Breitenkamp had ordered which caused this argument. Breitenkamp answered that he had ordered the removal of "that" from Starr's wall. *Id*. When Bryant realized that Starr was "not going to comply" with the order, he told Starr that they would be returning. *Id*. The deputies did return and removed the items from Starr's wall which included his "consecrated" items of "a picture of . . . patron saint Santa Muerte and . . . figurines of her and offerings." *Id*. Starr adds in his first amended complaint that practitioners of "Santeria" believe daily offerings must be given to their patron saints "to receive their blessings." *Id*.

For the Fourteenth Amendment claim now asserted in the first amended complaint, Starr alleges, "[t]he officers had direct knowledge due to me stating

2

numerous times that removal or to confiscate these items was a breach in my daily religious practices and also a violation of my rights which they completely ignored and disregarded my constitutional rights knowingly with callous disregard." ECF# 8, p. 6. For the Eighth Amendment claim, the first amended complaint now asserts, "My 8th amendment right was violated due to these officers' breaching my rights knowingly with callous disregard which has made me feel as if my rights don't matter within this facility this has caused me emotional and psychological distress because I feel as if my rights as an American don't matter due to these officers' negligence." ECF# 8, p. 8. The first amended complaint seeks only the following in relief, "compensatory damages in the amount of $900,000" and "punitive damages in the amount of $100,000." ECF# 8, p. 9.

As stated before, the court is screening this order mindful that it must dismiss the entire complaint or any part of it that, "is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). In doing so, the court liberally construes a pro se complaint applying "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), accepting all well-pleaded allegations in the complaint as true, *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006), and dismissing when the allegations, if true, are not enough to rise "above the speculative level" as to state a plausible claim for relief, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-558 (2007).

The plaintiff's first amended complaint includes allegations that the defendants acted "knowingly with callous disregard." ECF# 8, pp. 6, 8. A pro se

3

litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. The Tenth Circuit has made clear, "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

As stated in the court's first order, the plaintiff did not allege any participation or involvement by the defendants, Sheriff Calvin Hayden ("Sheriff") and the Johnson County Board of Commissioners ("Board"). The law in this circuit is clear:

> "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir.1997) (quotation and brackets omitted).

4

*Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). For both defendants, the plaintiff has added the conclusory allegation of respondeat superior liability for negligently training the deputies on what to do when inmates assert their rights to religious practices. ECF# 8, p. 2. This addition does not cure the deficiency as there still is nothing that connects the Sheriff or the Board to the events on September 24, 2020. "Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Bare allegations of negligent training are insufficient to state a constitutional claim. *See Stuart v. Jackson*, 24 Fed. Appx. 943, 955 (10th Cir. 2001); *Bradley v. Ash*, No. 20-3082-SAC, 2020 WL 3868900, at *3 (D. Kan. July 9, 2020). Coming forward with no facts about any policy or training involved here, the plaintiff's allegations of failure to train are nothing more conclusory and speculative statements. Without something more about the training and policies, the plaintiff's bald allegations against the supervisory defendants fail to state a claim. *Matson v. Kansas*, No. 11-3192-SAC, 2012 WL 28073, at *3 (D. Kan. Jan. 5, 2012). The amended complaint continues to allege only individual acts by the deputies and not any policy or regulation. *See Carr v. Zwally*, 760 Fed. Appx. 550, 554 n.4 (10th Cir. Jan. 8, 2019) (unpub.). The Board and Sheriff are dismissed.

The amended complaint states that after Starr refused to obey the deputies' orders and remove what he describes as his altar from the wall, the deputies left, but returned and confiscated it. He describes his altar as a prayer rug and these consecrated items: a picture of his patron saint Santa Muerte, figurines of her, and his offerings to her. ECF# 8, p. 5. Starr asserts the removal of these items

5

violated the First Amendment's Free Exercise Clause as an individual act of discrimination. He does not point to any discriminatory policy or regulation.

The Tenth Circuit has discussed the controlling law and pleading requirements for bringing a claim for an individual act of religious discrimination:

> The Supreme Court has stated that "[w]here the claim is invidious discrimination in contravention of the First ... Amendment[ ], [its] decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." [*Ashcroft v.*] I*qbal*, 556 U.S. [662] at 676, 129 S.Ct. 1937 [(2009)] (citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 540–541, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (plurality op. of Kennedy, J.)). "[P]urposeful discrimination.... involves a decisionmaker's undertaking a course of action '"because of," not merely "in spite of," [the action's] adverse effects upon an identifiable group.'" *Id.* at 676–77, 129 S.Ct. 1937 (alteration in original) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)). Thus, to plausibly state a claim of religious discrimination, Mr. Carr "must plead sufficient factual matter to show that" Mr. Zwally took his Bibles and religious materials "not for a neutral ... reason but for the purpose of discriminating on account of ... religion." *Id.* at 677, 129 S.Ct. 1937; *see also Pahls v. Thomas*, 718 F.3d 1210, 1230 n.8 (10th Cir. 2013) ("[W]here liability is to be imposed upon an individual defendant for discrimination in violation of the First Amendment, a plaintiff must prove a discriminatory purpose, supported by evidence of the defendant's subjective motivations.").

*Carr v. Zwally*, 760 Fed. Appx. at 554.

The plaintiff's amended complaint still fails to state a plausible claim of invidious religious discrimination. There is no allegation that when Deputy Brietenkamp initially ordered Starr to remove the things from the wall that he knew the picture, figurines, and offering items were an altar or part of a religious practice. Starr alleges he then explained this to Brietenkamp only after being told to remove the things from the wall. Starr fails to allege what specific items constituted his "offering." Both deputies gave Starr the opportunity to follow their orders and remove the items from his wall. Starr does not allege that the deputies denied him

6

the chance to keep the pictures and figurines in his cell or that they kept him from setting up his pictures and figurines elsewhere or at any other time. Nor did the deputies immediately confiscate those items. Instead, they left and returned, and when Starr still had not taken down the items, they removed them.

The plaintiff's amended complaint still fails to come forward with sufficient factual matter to show that the deputies confiscated the altar items for a discriminatory religious purpose and not for another reason, that is, the plaintiff's failure to obey orders of removing the displayed items from the wall. The complaint alleges no more than the plaintiff's act of displaying these items was what triggered Deputy Brietenkamp's initial order. Only after the deputy made his order did Starr defend his display of these items as his altar. At that point, Starr's refusal to comply with the deputies' orders became the central issue. Thus, the amended complaint remains insufficient at alleging that the deputies in removing the displayed items acted not for a neutral reason, that is, Starr's failure to remove items from the wall, "but for the purpose of discriminating on account of religion." *Carr*, 760 Fed. Appx. at 554 (internal quotation marks and citations omitted).

In a § 1983 action asserting liability against an individual defendant for First Amendment discrimination, "a plaintiff must prove a discriminatory purpose, supported by evidence of the defendant's subjective motivations." *Pahls v. Thomas*, 718 F.3d 1210, 1230 n.8 (10th Cir. 2013). This required showing involves more than "'awareness of consequences'" but "'involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group.'" *Pahls,* 718 F.3d at 1230 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662,

7

676-77 (2009)). The plaintiff's complaint alleges at most the deputies' awareness of consequences but fails to allege the deputies' targeting of religious materials for the purpose of discriminating on account of religion. *See Carr*, 760 Fed. Appx. at 555. The plaintiff does not allege the defendants made any statements to indicate a discriminatory motive. The plaintiff's amended allegations fail to state a claim for relief.

The amended complaint alleges a new count two violation of the Fourteenth Amendment in that his right to religious practices and consecrated items were violated when the officers knowingly seized them. He alleges no additional facts but simply repeats the same acts of individual discrimination. The court's analysis and finding on count one that no plausible claim of invidious discrimination has been alleged applies here too. The plaintiff's claim does not allege a right guaranteed by the Privileges and Immunities Clause of the Fourteenth Amendment. *United States. Nissen*, No. CR 19-0077-JB, 2020 WL 1929526, at *22 n.7 (D.N.M. Apr. 21, 2020). The claim is dismissed.

In count three, the plaintiff now asserts an Eighth Amendment claim for the officers breaching his "rights" and making him "feel as if . . . [his] rights don't matter within this facility." ECF# 8, p. 8. "'Vague allegations of eroded self-esteem, apathy, fear and feelings of differentness'" fail to state an Eighth Amendment claim. *Holden v. CEO Group Private Prison Contractors*, 767 Fed. Appx. 692, 695 (10th Cir. Apr. 8, 2019) (unpub.) (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1203-04 (10th Cir. 1996)). An Eighth Amendment violation does not arise from the plaintiff's personal and sincere disagreement with what the defendants did. *Thomas v. Brockbank*, 195

Fed. Appx. 804, 909 (10th Cir. Oct. 11, 2006) (unpub.); *see Polzin v. Mutter*, No. 10-C-0038, 2011 WL 1655568, at *4 (E.D. Wis. Apr. 29, 2011)("The Constitution does not protect against hurt feelings. *Purtell v. Mason*, 527 F.3d 615, 624 (7th Cir. 2008)."); *Wheeler v. Judd*, No. CV 18-00777, 2021 WL 275448, at *6 (D.N.M. Jan. 27, 2021) ("The claims relating to his religious beliefs do not establish that there was any degree of actual or potential injury or that society considers the acts that he complains of to be so grave that they violate contemporary standards of decency." (citations omitted)). No Eighth Amendment claim has been stated on the facts alleged, because plaintiff has not alleged that prison officials were deliberately indifferent in subjecting him to a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The plaintiff does not ask for declaratory or injunctive relief. He only seeks compensatory and punitive damages for the violation of his rights and his emotional and psychological distress. Federal law prohibits prisoners from bringing federal actions "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Section 1997e(e) . . . provides in pertinent part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id.* In *Searles v. Van Bebber*, 251 F.3d 869 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002), the Tenth Circuit specifically held that the "Limitation on Recovery" set forth in § 1997e(e) applied to a First Amendment claim that prison officials denied the plaintiff a Kosher diet and to claims for actual or compensatory damages. *Id.* at 879, 881. The plaintiff's

9

complaint fails to allege any facts to support a cognizable claim for damages. There are no allegations to indicate the defendants' actions caused the plaintiff to sustain a physical injury. Thus, the plaintiff has no claim for monetary damages.

"Punitive damages are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles v. Van Bebber*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The plaintiff offers no more than conclusory allegations without pleading any facts to show reckless or callous indifference to his right to religious exercise.

The court denies the plaintiff yet another opportunity to amend his complaint. The court is satisfied the plaintiff has had enough chances to allege his claims. If the plaintiff needed more time to file his first amended complaint, he should have asked for an extension of time setting forth the reasons and proof in support of it. The court is not inclined to credit his failure to do so as a reason for a third chance to allege his claims. The court denies the plaintiff's motion to amend.

IT IS THEREFORE ORDERED that the plaintiff's motion (ECF# 9) is denied, and that this case is dismissed as the plaintiff has failed to state a plausible claim for relief.

Dated this 3rd day of March, 2021, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge